The next case on the calendar is United States v. Mayer, and we have Appellant's counsel on Zoom. Mr. Culp, can you hear us okay? I can, your honor. Can you hear me? Yes. We're just gonna wait for the government to get set up here. Thank you so much. All right. Whenever you're ready, Mr. Culp. Thank you. May it please the court. Robert Culp, assigned counsel for Alexander Mayer. Thank you for allowing me to argue remotely. Although he never abused any minor, Mr. Mayer accepts responsibility for the egregious harm to which he contributed simply by consuming child pornography. This appeal concerns his 10-year supervised release after his 90-month sentence, which by law is not about retribution, but is directed to rehabilitation and reintegration into society. This is a vital task in this case, as Mr. Mayer has been torn apart as he has tried to cope with the ostracism and alienation of being both a homosexual and an orthodox Jewish community. In the limited time available, I would focus on our appeal that this court remand for recalculation of his conditions of supervised release with respect to First Amendment sensitivities. Now, on one of those, I'm not going to dwell on it unless the court wants me to, because the government agrees that there should be some attempt to accommodate his reporting conditions with respect to when he is on the Sabbath or during Jewish holidays. I appreciate that the government agrees to that. What about the polygraph requirement? Well, I'm hoping to focus on the other First Amendment issue, Your Honor, but on the polygraph... All right, well, you don't have that much time. Which is your preferred one? Oh, the free expression, the legal pornography free expression issue, as to which the government does not agree to the remand is my preference, but I'm happy to answer your questions. No, no, go ahead. Okay, I'm sorry, Your Honor. No, no, that's all right. On that one, the Supreme Court and this court have also said there are weighty interests at stake which require narrow tailoring of any restrictions. And, of course, we know that the Internet is considered a vital First Amendment form. So are you arguing about his ability to only use two Internet-connected devices? No, no, Your Honor. I'm talking about the restriction. He's not permitted to use Internet devices to access legal pornography, adult pornography. Right, so on that one, Mr. Kolb, sometimes the district court just imposes that and doesn't explain why, and that's problematic. But here, it was raised, and the district court noted that Mr. Mayer's counsel below, in connection with the sentence, he explained that how he got the child pornography, it was mixed in with adult pornography that he was getting on the Internet, and that that's how his whole offense developed. And then the district court could rely on that to say, well, we don't want him to have Internet adult pornography because that's the way he got the child pornography to begin with. Why is that not an appropriate restriction when the offense conduct involved child pornography coming to him with the adult pornography? Several points on that, Your Honor. Can you add to that, when you're responding, why the fact, or why it isn't obviated by the fact that he can access legal pornography, so whatever First Amendment, and why it's unique to the Internet? So go ahead and answer. I'm going to do my best. I'll do my best to answer all these questions. First of all, with respect to what trial counsel had said, trial counsel was referring to these so-called drug-fueled parties that he had gone to to deal with his alienation, and they were taking methamphetamine, serious drugs, and he was handed, I guess, thumb drives or something like that that had both legal and illegal pornography on it. That's what the trial counsel was referring to. I can read you what he said, Mr. Kolb. He did refer to party scenes, but then he said, and on the websites that he was involved in, he refers to websites, and the places he downloaded pornography, often in packets and large groups of pornography that contained a variety of things, things you're really interested in and things you're not. So he referenced the Internet and downloading from the Internet. Yes, and I'm getting to that second point right now, if I could. So Judge Kogan heard those remarks and said, well, I'm not saying that it's a gateway kind of thing where he necessarily will gravitate to illegal pornography from legal pornography, but what I'm saying is that's how he got it. Well, even if you add the dimension that you just added, Your Honor, he goes on to say that the Internet inherently has websites have illegal pornography and legal pornography mixed in together. I don't know of any support in this record for that concept. Perhaps Judge Kogan had another case where something like that came up. But what I'm saying is that I find it hard to believe that there can't be a more narrowly tailored order that would deal with that, that perhaps would... The narrowly tailored part of it is that he can have as much print adult pornography as he would like. That's pretty narrowly tailored, isn't it? So I don't know how easy it is to access the print media. You're right, it doesn't restrict print media. But if I could go to another point about the Internet, I see I'm already considerably over and I want to make hopefully an important point beyond what I just made. Go ahead. That we're in the era of Internet dating. And it's very important that Mr. Meyer adjust back to sort of an adult sexuality adjustment when he gets to his supervised release. And he, like others, his peers and other people, would like to be able to use the Internet to communicate with persons he may be dating. And what people are doing these days is that they are using the Internet and they are exchanging what is considered pornography. Which condition prevents him from doing that? This one. Because he can't do what other people are doing right now, is that they're not just talking to each other over the Internet, they're exchanging pictures of each other and they are pornographic. And he can't do that. He can't do what his peers are doing because of this restriction. Now, I find it hard to believe that the Department of Probation cannot supervise this and perhaps limit him to only one-on-one Internet associations. Or, as I said before, with regard to the websites, I find it hard to believe that the United States government can't say, okay, here's an approved website that you're allowed to go to. We don't want you to go to this other website. I don't think there's any justification that the Internet is inherently swarming with illegal pornography. And he's going to be under the supervision of a probation officer. And on top of that, he's mandated to be in therapy. And I think that if we're going to reconsider the religious issue, and I appreciate that the government is willing to agree to that, I think we should also reconsider this one and find something that's more narrowly tailored to the realities. Thank you, Mr. Carter. Ms. Kastner? May it please the Court. My name is Jillian Kastner, and I'm an assistant United States attorney in the Eastern District of New York. And I also represented the government in the District Court. The District Court in this child pornography distribution case did not abuse its discretion in imposing a 10-year term and certain special conditions of supervised release. Likewise, to the extent that the defense counsel did not waive the argument below, the District Court did not commit plain error in ordering a $10,000 restitution award to a victim depicted in child pornography series or images that the defendant possessed. I'm going to focus my argument on what defense counsel just discussed, because I think this is an important point. Defense counsel before the District Court raised all the arguments that are being raised before this Court. And they were considered by the District Court. Well, that happens all the time. And then people are dissatisfied and they appeal. That's correct. But here, the District Court didn't just... The government agrees that a ban on adult pornography does merit close examination, and that there can be no... it must impose no greater... What about these mandatory polygraph tests? How do they operate? What triggers one? Your Honor, the polygraph tests in this case are... They're a part of how probation monitors the defendant. In this case, the term says that the defendant... But how are they triggered? Under what circumstances would I be required to take a polygraph test? Your Honor, I believe that the Probation Department is at liberty to request a polygraph in situations where the probation officer deems the information necessary for risk management and correctional treatment. What does that mean? Give me an example. That's just a vague standard. Give me an example of something that would require this man to come in and sit for a polygraph test. Sure. Let's say probation is monitoring a defendant's streaming devices or Internet-capable devices, and the Probation Department determines that something has been deleted. That what? That something has been deleted. Say, in Internet history. Then the probation officer may say, I think a polygraph test is appropriate because there's a concern here that the defendant has violated the terms of supervised release. Well, we all know that there's a very substantial degree of unreliability with them. We've said that. So then is he required, at the risk of violating supervised release, to answer any questions the probation officer would give him? I think the point is that the defendant would be required to participate in a polygraph examination. Would he be required to answer any questions that the probation office asks him? Could he say, any questions? Are there any limits, any contours about this? I don't think, Your Honor, that the defendant would be required. The defendant could say, I don't want to answer that question. I don't think there's any- And the probation officer takes him back to Cadman Plaza for a violation hearing. Well, Your Honor, I don't believe that by saying, I don't want to answer that question, the defendant would necessarily be in violation of supervised release. So you say, I don't want to answer that question because it might incriminate me. It might give me some information of criminal behavior the governor doesn't already know about. Yes, Your Honor, I don't believe that would be a violation of the term of supervised release. I'm a little confused. My understanding is that the polygraph is part of a treatment program. It's not some independent test that's operating outside of treatment. It specifically says, in a special condition, it's part of his treatment. So isn't the polygraph used in conjunction with his treatment for disorders? Yes, Your Honor, it is part of treatment, and that is the whole purpose of it. It is not meant to try to have a defendant admit guilt to wrongdoing. So it's no different than when someone who's treating him asks him what he's doing or not doing with respect to his activities to try to make sure that he's not doing anything illegal. He responds to those questions as part of his treatment, right? And in order to assess the veracity of that, even though it's not admissible in court, sometimes you use the polygraph to aid them in determining whether or not, when he's telling them what he is or isn't doing, whether he's being truthful or not. Right? Yes, I believe that's right. So the Fifth Amendment issues are no different than the interviews that he has to give to treatment providers all the time about what he's doing or not doing. That's correct. How does a polygraph examination address pedophilia? Sorry, I'll recognize- Or how is it part of a treatment for someone who likes to look at child phenomena? So I'll recognize that I'm over time, but I'll try to answer that question. It's part of treatment because sometimes even the threat of a polygraph examination causes- That's what I'm- Sometimes even the request that someone participate in a polygraph examination, it raises- It's designed to be one of many tools. Yeah, okay. I don't mean to say that, but what's the component that this tool plays in treating someone for pedophilia? It's meant to identify instances where somebody who is in treatment is not being forthright. In other words, behaviors where they may have concealed things, behaviors where they may have deleted items. It goes with electronic supervision, in other words. I think it's often used in cases where things have been deleted from electronics to ask about what was deleted. Matt, if I could just jump in. I was under the impression that the judge considered the importance of the polygraph and actually had a colloquy that says, like, I don't- It does not mean I accept polygraph early or accurately. If the only thing that we have gotten wrong here is a bad polygraph response, it's not going to matter to me. My understanding is that the district court wanted it as part of the tools and the information that he had in order to assess whether or not he wanted to adjust the sentence in the future. I mean, so now I'm confused. Is he having to submit to regular polygraphs? I didn't understand that from the record. I thought the judge was going to use it when making determinations about what future sentences were going to look like. So, I think the polygraph can be used for all of these things. If the defendant is found to be forthright and honest on his polygraph examinations and have no violations of the restrictions on his electronic monitoring and viewing of adult pornography, the district court was clear that if there are five good years behind the defendant- Let me just see if I can focus on the question. The judge isn't going to make determinations about when the polygraph is used or not used. This is part of the treatment program. So, the people who are treating them, if he says, I deleted images, and they say, were they child pornography? And he says, no, they weren't child pornography, but they have some doubts based upon what they had before them. They could say to him, well, we're going to give you a polygraph. And the experience is that sometimes the person, when told they're going to have a polygraph, will admit, okay, you don't have to give me a polygraph, it was child pornography. Or if they continue to say it wasn't child pornography, when the polygraph shows deception and they're confronted with the results of the deception, then they do admit. So, it's not that it's going to be used before Judge Kogan. It's that the treatment provider is trying to test whether or not what they're saying is truthful and helps them. Yes, I think that's accurate. It does help them. And the point being that with electronic monitoring, it's only so useful. So, it's useful while you're- If you can keep up with what a defendant is viewing, then it's useful. But if something has been deleted, if something strange is noticed by a probation department and they're trying to treat him and trying to make sure he's not- The last question I have for you, are you aware of any instance where they've tried to offer the polygraph somehow as a violation, a part of a violation that he failed the polygraph and therefore he should be violated based on the failure of the polygraph? It's not used for that purpose, right? Your Honor, I'm not aware of any instance. Or are you aware of any instance where something that he said during the polygraph was trying to be offered, you know, notwithstanding the Fifth Amendment concerns? Are you aware of any instances of that? I'm not aware of any use of something that somebody said in a polygraph as a violation of supervisory. Thank you. Thank you. Mr. Kopp, you have one minute. Thank you. On the polygraph, just to throw in, the District Court Counsel did object to having the requirement at all. And I've made some arguments along those lines, but also asked that there be a sort of Fifth Amendment protection built in, that it would only be used for the purpose of monitoring to sort of take away that fear that you're being required to incriminate yourself. Now, this court, I don't have the case at hand, but this court has held that that issue is unripe, I believe, for review until it actually happens someday. But that does leave people who are being supervised in the untenable position of not knowing what could happen. And I think that's difficult. I don't understand why you can't say, well, we'll only use this for purposes of supervision. The argument I alluded to earlier was an argument I made under Johnson that Johnson's the lead case here, where Johnson had already indicated he was going to be a problem in advance when this condition was placed in. And there's lots in the record there that I quote about how Johnson was being uncooperative even before his supervised release would even begin. And what I'm saying is that there's no evidence of that here, of lack of cooperation. And if, I'm sorry. No, go ahead. You can finish your sentence. If I just, to go back to the argument I was making earlier on the legal pornography, if I could just. I think I was able to make the key points I was trying to make, but one thing I wanted to throw in is that if you look at the report of the expert psychiatrist, he talks about how Mr. Mayer had been looking at adult pornography for several years, but didn't get into this problem until he was going to those parties that were discussed. And then I presumably got involved in these groups, Your Honor, that you had mentioned, also these texting groups. And I just think that there's got to be a way to focus on that aspect of it without just throwing the entire Internet out with the bathwater. That's the point I'm trying to make. Thank you, Bo. Thank you. We'll reserve decision and have a good day.